# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NORTH CAROLINA
### EASTERN DIVISION

| | | |
|---|---|---|
| ANGELA O'NEAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| v. | ) | |
| | ) | |
| TOWN OF BEAUFORT, NC, | ) | Civil Action No.: 4:21-cv-31 |
| | ) | Jury Trial Demanded |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES Plaintiff, ANGELA O'NEAL, by and through undersigned counsel, and complains against Defendant Town of Beaufort, NC as follows:

## INTRODUCTION AND NATURE OF THE CASE

Plaintiff brings this action against Defendant for its violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and Title I of the Civil Rights Act of 1991, 42 U.S.C. § 1981 for unlawful employment practices based on the protected class of sex, including (1) gender discrimination/sexual harassment, (2) hostile work environment, and (3) retaliation. Plaintiff seeks all available remedies including, but not limited to, compensatory damages and liquidated damages, as well as available equitable relief pursuant to 42 U.S.C. § 2000e-5(f)-(k), 42 U.S.C. § 1981a, 29 U.S.C. § 626(b) and as otherwise authorized pursuant to law.

## JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claim for relief asserted herein arises under federal law, and under 28 U.S.C. § 1343(a)(4), as the claims herein seek relief under acts of Congress providing for the protection of civil rights.

2.        Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendant is a resident of this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

3.        Plaintiff Angela O'Neal ("Sgt. O'Neal" or "O'Neal") is a citizen and resident of Carteret County, North Carolina. At all times relevant hereto, O'Neal was, and remains, employed as a Sergeant with Defendant Town of Beaufort's Police Department.

4.        Defendant Town of Beaufort, NC ("Defendant Beaufort" or the "Town") is a municipal corporation in Carteret County, North Carolina, established and existing pursuant to Chapter 160A of the North Carolina General Statutes, as defined in N.C. Gen. Stat.§ 160A-1 and possessing all corporate powers as set forth in N.C. Gen. Stat.§ 160A-11. Pursuant to N.C. Gen. Stat.§ 160A-281, Defendant Beaufort appointed Paul Burdette, Jr. as the Town's Chief of Police ("Chief Burdette" or the "Chief").

5.        In further exercise of its statutory powers, Defendant Beaufort has established a municipal code of ordinances, which provides for the appointment of a town manager to serve as the chief executive officer of the administrative branch of the Town's government. At all times relevant hereto, John Day ("Day") has served as Defendant Beaufort's Town Manager. In his capacity as Town Manager, Day is responsible for implementing the policies and enforcing the ordinances enacted by the Town.

6.        At all times relevant hereto, Defendant Beaufort acted through its duly appointed Chief of Police and Town Manager, and their respective designees including, but not limited to the Town's employees, managers, and directors.

2

7.     The acts, edicts, and practices of Chief Burdette and Day represent the official policies of Defendant Beaufort.

8.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.     Sgt. O'Neal timely executed and filed a Charge of Discrimination with the Raleigh Area Office of the Equal Employment Opportunity Commission ("EEOC") on June 2, 2020, alleging violations of her federally protected civil rights.

10.     Sgt. O'Neal requested a Notice of Right to Sue from the EEOC on December 10, 2020. The EEOC issued the Notice of Right to Sue on December 17, 2020.

11.     Sgt. O'Neal complied with all deadlines relating to the investigation of her formal administrative complaint.

12.     All conditions precedent to the institution of this lawsuit have been fulfilled.

## WAIVER OF GOVERNMENTAL IMMUNITY

13.     Upon information and belief, Defendant Beaufort has waived its sovereign or governmental immunity though the purchase of one or more policies of liability insurance pursuant to N.C. Gen. Stat.§ 160A-485 and/or by participating in a local government risk pool pursuant to N.C. Gen. Stat.§ 58-23-5.

## FACTUAL ALLEGATIONS

14.     Sgt. O'Neal was hired by Defendant Beaufort on September 5, 2014 to work as a reserve officer for the Town's Police Department (the "Department" or "Police Department").

Prior to joining Defendant Beaufort's Police Department, Sgt. O'Neal worked as a Detention Officer with the Wake County Sheriff's Office.

15. Defendant Beaufort hired Sgt. O'Neal as a full-time patrol officer on January 1, 2015 and promoted her to Sergeant in or around October 2018.[1]

16. In her position as sergeant, O'Neal's immediate supervisor is, and at all times relevant hereto was, Captain Troy Edwards ("Capt. Edwards"); however, any member of the Department with a higher rank than Sgt. O'Neal was her superior and had the authority to reprimand or otherwise discipline her.

17. Sgt. O'Neal has, and will always, pride herself as an upstanding law enforcement officer. Throughout her career, Sgt. O'Neal has gone above and beyond to serve her community to the best of her ability.

18. Sgt. O'Neal also strives to continually grow in her law enforcement career by seeking out higher education in her field. In April 2020, Sgt. O'Neal graduated from North Carolina State University's Administrative Officers Management Program. In December 2020, Sgt. O'Neal graduated from North Carolina Wesleyan College with a Master of Science in Criminal Justice Administration.

---

[1] Prior to being promoted to sergeant, Sgt. O'Neal had applied for several positions within the Department for which she was qualified, yet male officers with less qualifications were chosen over her. In June 2017, Sgt. O'Neal applied for a School Resource Officer ("SRO") position. Though Sgt. O'Neal had the training, education and experience necessary for the position, Chief Burdette selected a male for the position. The male candidate who was selected for the SRO position had no specialized education, nor any experience with children, and had previously been disciplined for issues involving alcoholism. Sgt. O'Neal later learned that Chief Burdette stated, in the presence of at least two (2) members of the Department, that he wanted a male in that position. Sgt. O'Neal met with Chief Burdette on multiple occasions to voice her concerns regarding the disparate treatment between male and female officers within the Department. Chief Burdette told Sgt. O'Neal that she was "hypersensitive" and "did not perceive things correctly." In April 2018, Sgt. O'Neal applied for a detective position within the Department. Again, a less qualified male candidate was chosen for the position. After not being selected for the detective position, Daniel Garner, a member of the Department's hiring committee, told Sgt. O'Neal that "Just because you have a degree in fingernail painting or basket-weaving does not mean you are automatically qualified to get the detective position." When Sgt. O'Neal was promoted to sergeant in October 2018, she was selected for the promotion by an outside assessment board.

4

19.     Prior to the incidents which are the subject to this action, Sgt. O'Neal had never been discipled for her work performance.

20.     Shortly after she was hired as a full-time employee in 2015, Lieutenant Daniel Garner ("Lt. Garner"), a higher-ranking officer[2], began commenting on how Sgt. O'Neal looked in her clothes.

21.     In early 2018, Lt. Garner's behavior escalated when he began sending sexually suggestive text messages to Sgt. O'Neal. By way of example, Lt. Garner stated, "I've been hitting on you for a long time," "you're [sic] still a good-looking woman," "I won't tell [your husband] I wolf whistled you in the hallway," among other messages. He referenced a "nice bush" by a town person's front door and that it is a "well groomed" bush.

22.     Further, in or around September 2018, during Hurricane Florence, the Department requested all officers spend the night at the police station in case the community required emergency assistance. However, Sgt. O'Neal left the station to stay at home after Lt. Garner asked her to spend the night with him in his office. Lt. Garner pinned Sgt. O'Neal between himself and a wall and said she could "sneak into [his] office after everyone is asleep" and "no one will ever know" because she could leave "early in the morning before anyone wakes up." The following day, Lt. Garner texted Sgt. O'Neal and stated, "you ruined my plans last night. You up and left. I was gonna [sic] see if you needed snuggling in this big scary storm."

23.     In and around November 2019, Lt. Garner began arranging the stuffed animals that Sgt. O'Neal kept on her desk (which were gifts from her family) in lewd sexual positions. Each

---

[2] Daniel Garner was promoted to lieutenant in the Spring of 2019; however, for the purposes of this Complaint, he will be referred to as Lt. Garner throughout. At all times relevant hereto, Lt. Garner was a higher-ranking member of the Department than Sgt. O'Neal.

time Sgt. O'Neal found these vulgar displays on her desk, she would rearrange them. Nevertheless, several times a week Lt. Garner would arrange the stuffed animals into varying explicit displays.

24.     In and around December 2019, Sgt. O'Neal confronted Lt. Garner and asked why he continued to put her stuffed animals in sexual positions—he had no response. Several days after confronting Lt. Garner, Sgt. O'Neal found her stuffed animals in a "murder-suicide scene." The animals' "brains" were laying on Sgt. O'Neal's desk covered in fake blood. The animals had been cut with a knife or scissors, and their stuffing had been pulled out and was covered with fake blood.

25.     Though Sgt. O'Neal had repeatedly asked him to stop, Lt. Garner continued to arrange her stuffed animals in sexually explicit positions.

26.     Repeatedly finding her stuffed animals "performing" sex acts was very upsetting to Sgt. O'Neal because she had recently been promoted to sergeant, she was the only female supervisor in the Department at that time, and she was trying to fulfill her role as an authority figure to her subordinate officers. Moreover, Sgt. O'Neal's desk is visible to anyone who walks by her office, including members of the public, and she shared her office with three (3) male sergeants.

27.     Chief Burdette and other supervisory members of the Department were aware of Lt. Garner's harassment but took no actions to stop it. In November 2019, Chief Burdette asked Sgt. O'Neal if she had "seen [her] animals." She checked her office and told Chief Burdette they were fine, to which he replied, "Oh, he must have moved them back then."

28.     In December 2019, Capt. Edwards told Sgt. O'Neal he had "heard there's a sexual harassment charge in the works." Unsure of what he was referring to, Sgt. O'Neal asked him to clarify and Capt. Edwards said "yeah, your animals are sexually harassing each other." Sgt. O'Neal

told Capt. Edwards that Lt. Garner was the person responsible for the sexual displays, and he replied, "that's Daniel for you."

29.     In or around April 2020, Sgt. O'Neal removed her stuffed animals from her office because she recognized this was the only way to stop Lt. Garner's harassment. Shortly thereafter, Lt. Garner began making complaints about Sgt. O'Neal to the Department's administrative staff.

30.     In early May 2020, Sgt. O'Neal was out of work for one (1) week to have and recover from ear surgery. When she returned to work on May 11, 2020, Sgt. O'Neal had an email from Chief Burdette about the Department's revised ballistic vest policy, which went into effect while she was out. The revised policy required Department approval if an officer wished to wear a ballistic vest other than the vest issued by the Department.[3]

31.     Only a few hours after reporting for her shift on May 11th, Sgt. O'Neal was told to get her Department-issued outer carrier vest and try it on for Chief Burdette and Capt. Edwards. Her male, supervising officers examined her Department-issued vest and stated that the vest fit "fine." They also said Sgt. O'Neal had "unrealistic expectations" as to how the vest should fit. Sgt. O'Neal explained that not only was the vest too bulky, but it cut too tightly into her underarms and breasts. Chief Burdette and Capt. Edwards told her ballistic vests "weren't comfortable" and she needed to get used to it.

32.     Because she had no other choice, Sgt. O'Neal wore the ill-fitting Department-issued vest for the remainder of the day. Later that afternoon, Chief Burdette informed Sgt. O'Neal that he had issued her a written warning for violating the Department's _revised_ ballistic vest policy—

---

[3] On May 4, 2020, prior to her surgery and the policy revision, Sgt. O'Neal met with Chief Burdette regarding her vest. Sgt. O'Neal told Chief Burdette that she preferred to wear an under-vest, rather than the Department-issued outer-carrier vest because it was too large for her small frame. Chief Burdette said it was "fine" for Sgt. O'Neal to wear the under-vest (a non-Department issued vest) and he told her other officers in the Department also chose to wear under-vests.

a policy that had not been in place during her last shift. When Sgt. O'Neal worked last prior to her surgery, she wore the under-vest, which had complied with the previous policy. Nevertheless, Chief Burdette disciplined Sgt. O'Neal for violating a policy that she had been informed of only hours earlier.

33.     On May 12, 2020, Sgt. O'Neal met with Chief Burdette and requested that he amend the disciplinary warning to include a statement indicating she had reported to her previous supervisor that the Department-issued vest did not fit properly. Chief Burdette accused Sgt. O'Neal of "changing her story," and then left his office and returned with Lt. Garner. The Chief stated he needed Lt. Garner to be his "second set of ears," and that he did not think Sgt. O'Neal intentionally "changed her story," rather, it is "something in your thought process that is wrong or your perception." Lt. Garner agreed with Chief Burdette's assessment of Sgt. O'Neal.

34.     Sgt. O'Neal felt humiliated in this meeting—not only had Chief Burdette questioned her integrity and honesty, but he did so in front of Lt. Garner, who had been sexually harassing her for months and years.

35.     Approximately an hour after Sgt. O'Neal met with Chief Burdette, Capt. Edwards called her back into the Chief's office and asked if she wanted to discuss anything else. Sgt. O'Neal declined, but stated, in the future, she did not want Lt. Garner present in private meetings with her. When Chief Burdette asked why, Sgt. O'Neal told him that Lt. Garner "humiliates me." Neither Chief Burdette nor Capt. Edwards asked for an explanation.

36.     On May 20, 2020, Capt. Edwards called Sgt. O'Neal into a meeting with he and Lt. Garner. During the meeting, Sgt. O'Neal, in Capt. Edwards' presence, confronted Lt. Garner about 1) arranging the animals on her desk in lewd, sexual positions, and 2) why he questioned her

subordinate officers about her integrity because it undermined her authority. Capt. Edwards made no comment, other than to excuse Sgt. O'Neal from the meeting.

37.     Approximately 30 minutes after the meeting concluded, Capt. Edwards informed Sgt. O'Neal that her squad assignment had been changed, effective June 1, 2020. Sgt. O'Neal reminded Capt. Edwards that she had been assigned to the A/B squad to accommodate her graduate school class schedule and if re-assigned to the C/D squad, she would likely fail the semester. Capt. Edwards responded, "things happen."

38.     On May 21, 2020, Capt. Edwards met with Sgt. O'Neal to further discuss her squad assignment. Sgt. O'Neal pointedly asked Capt. Edwards why he changed her squad assignment just 30 minutes after she "confronted Lt. Garner about the bad things he'd done" to her. Capt. Edwards did not comment, nor did he ask for any further detail; however, he did inform Sgt. O'Neal she would be required to use her vacation time to accommodate her school schedule.

39.     Later that evening, Sgt. O'Neal sent Capt. Edwards an email requesting three (3) days off to finish her graduate school assignments for the semester. On May 29, 2020, Capt. Edwards told Sgt. O'Neal that if she intended to take days off, she needed to prepare a formal statement in Microsoft Word and attach it to an email. Sgt. O'Neal followed Capt. Edwards instructions and emailed him a "formal request."

40.     On May 31, 2020, Capt. Edwards called Sgt. O'Neal and informed her that her pre-approved vacation had been cancelled by Chief Burdette. Sgt. O'Neal reiterated that without the days off, she would fail her classes. She asked Capt. Edwards if he could postpone her squad reassignment by 2 weeks—he told her no.[4] Sgt. O'Neal told Capt. Edwards that the things he and

---

[4] Because Defendant Beaufort refused to postpone her squad assignment or allow her vacation, Sgt. O'Neal was forced to miss required classes, and as a result, she failed a course.

9

Chief Burdette were doing to her were not fair and were clearly done in retaliation for reporting Lt. Garner's behavior to them.

41.    Approximately 15 minutes after their phone call ended, Capt. Edwards sent a text message to Sgt. O'Neal; however, the text message was intended for Chief Burdette. The text message read: *"Message delivered to Angie. Total panic, we're the reason she's failing her class, and this is a big conspiracy by us because of the meeting last week where she has accused Daniel of some unknown act toward her."*

42.    Upon receipt of the text message, Sgt. O'Neal called Capt. Edwards to clarify. Capt. Edwards stated if Sgt. O'Neal wanted to make a complaint about Lt. Garner, she needed to "spell it out" for him because he was getting "sick and tired of the innuendoes about Daniel," and it needed to stop. Sgt. O'Neal asked to sit down with him so she could tell him everything, to which Capt. Edwards replied, "this can wait. I will talk with you next week." Capt. Edwards never followed up with Sgt. O'Neal regarding her requested meeting.

43.    On June 1, 2020, Sgt. O'Neal filed a grievance with Defendant Beaufort to address, among other items, 1) Chief Burdette's refusal to allow Sgt. O'Neal to place rebuttal information in her personnel file regarding the two (2) negative entries he placed in her file; and 2) the Chief's decision to change to her squad assignment in retaliation for the complaints she made about Lt. Garner.[5]

44.    On June 2, 2020, Sgt. O'Neal submitted a Charge of Discrimination to the Raleigh Area Office of the EEOC alleging she had been subject to sexual harassment, a hostile work environment and retaliation, in violation of her federally protected constitutional rights.

---

[5] Defendant Beaufort declined to remove the negative entries from Sgt. O'Neal's personnel file but granted her request to remain on the A/B shift through December 2020, when her graduate school program was completed. Defendant Beaufort took no action regarding Sgt. O'Neal's complaints of retaliation.

10

45.     Shortly after Lt. Garner received a copy of Sgt. O'Neal's EEOC Charge, Lt. Garner reported to Chief Burdette that a male patrol officer on Sgt. O'Neal's squad had made a "sexually inappropriate comment in the presence of two females." Chief Burdette immediately suspended the officer, took his gun and badge, and instructed Sgt. O'Neal to drive him home. Chief Burdette asked Sgt. O'Neal her thoughts on the incident. She stated she did not understand why her male subordinate officer was suspended for an off-handed comment, when Lt. Garner had been harassing her for years by sending her sexually explicit text messages and creating lewd displays with the stuffed animals on her desk. The Chief replied, "the animals were a joke," and requested to see the text messages.

46.     Approximately two (2) months after Sgt. O'Neal filed her grievance and EEOC Charge, and only after Chief Burdette had read the sexually suggestive text messages Lt. Garner had sent Sgt. O'Neal, Defendant Beaufort hired an "outside investigator" to investigate the claims against Lt. Garner. Coincidentally, the investigator was an old friend of Chief Burdette's.

47.     The investigator spent approximately three (3) days at the Department, taking statements from select officers and employees. However, the investigator did not interview Lt. Garner's subordinate officer, and he declined Sgt. O'Neal's offer to provide additional text messages from Lt. Garner admitting that he had constructed the "murder-suicide" scene. The investigator told Sgt. O'Neal that he "had what he needed."

48.     Several weeks later, Chief Burdette informed Sgt. O'Neal that her allegations against Lt. Garner had been "substantiated," but because the disciplinary process was confidential,

she received no further information.[6] The Chief informed her that Lt. Garner would return to work soon.

49.     Prior to Lt. Garner returning to work, Sgt. O'Neal requested not to have to work directly with Lt. Garner any longer. Chief Burdette said that was not possible.

50.     Within a week of his return to work, Lt. Garner again began making sexual remarks around the police station. Two of Sgt. O'Neal's subordinate officers reported Lt. Garner's behavior to her, and as a supervisor, she was required to inform Chief Burdette. When she spoke with the Chief, he accused Sgt. O'Neal of "keeping this thing going," and asked her when she would "get over this." Chief Burdette added that the Department was ready to move on, but she was holding everyone back over "old text messages" and "pranks that were done with some stuffed animals." Chief Burdette told Sgt. O'Neal that her behavior would not be "tolerated," and that he was putting her "on notice."

51.     On September 21, 2020, Sgt. O'Neal again requested not to work around Lt. Garner. Chief Burdette told her, "I cannot separate you. You are going to have to figure it out."

52.     Because Chief Burdette refused to separate Sgt. O'Neal from Lt. Garner, she would sit in her patrol car while at the station, when possible, to avoid seeing Lt. Garner.

53.     Anxious and uncomfortable about working with Lt. Garner again, Sgt. O'Neal went to Defendant Beaufort's HR Department to request information on the Town's Employee Assistance Program ("EAP"),[7] specifically counseling services. Sgt. O'Neal explained to the HR representative that she would like to speak to a professional about strategies to help her cope with

---

[6] Upon information and belief, Lt. Garner told officers that he had been "cleared of all charges," and had been found not in violation of policies related to Sgt. O'Neal complaints. Upon information and belief, Defendant Beaufort determined Lt. Garner was "guilty" of a lesser policy violation than sexual harassment, which means Lt. Garner was disciplined much less harshly and he remained eligible for promotion.

[7] Defendant Beaufort's EAP is a purportedly confidential program which provides Town employees with free counseling services, among other benefits.

working with Lt. Garner again. The EAP services were promoted as strictly confidential; however, Sgt. O'Neal reiterated to the HR representative that she wanted to keep her EAP request confidential because she did not feel comfortable discussing it with members of the Police Department.

54.     Approximately two (2) hours later, Chief Burdette called Sgt. O'Neal into a meeting with himself and the HR representative she had spoken with regarding EAP services. The Chief asked why she had requested counseling service, and Sgt. O'Neal explained she wanted professional advice about how to handle Lt. Garner's return to work because she did not trust Lt. Garner, nor did she feel safe around him. The Chief asked Sgt. O'Neal why she felt uncomfortable asking him about the EAP and why she did not want members of the Department to know she requested EAP services. Chief Burdette further questioned Sgt. O'Neal as to whether she was "mentally capable" of doing her job since she had requested EAP services, whether she could perform her job while under such "obvious pressure," and if she was able to serve the community adequately in her "present state."

55.     After Lt. Garner's behavior returned to work, the Department's administrative staff continued to harass Sgt. O'Neal and make her working conditions even more unbearable. On several occasions, Capt. Edwards questioned Sgt. O'Neal's subordinate officers, asking questions such as, "how is [Sgt. O'Neal] doing as a sergeant? Do you feel safe having her making decisions? Do you feel uncomfortable having to work under her?" Her subordinate officers warned Sgt. O'Neal to "watch herself" because you "have a target on your back."

56.     On October 1, 2020, Chief Burdette told Sgt. O'Neal she had been re-assigned to the C/D squad in May 2020 because of her "performance issues."[8] This comment stunned Sgt. O'Neal because she had never received negative feedback on a performance evaluation, nor any form of discipline (until after she report Lt. Garner's harassment). In her January 2020 performance evaluation, Chief Burdette stated, among other praises, that "Sgt. O'Neal developed significantly over the evaluation cycle;" "she maintains a positive working relationship with other members of the department and represents the department with pride;" and "she is compassionate and willing to problem solve when the circumstances permit."

57.     The Chief also claimed that Capt. Edwards had previously reported her performance issues, yet Capt. Edwards made the following written statements regarding her performance on this same evaluation:

    i.    "Sergeant O'Neal adheres to the chain of command and follows established policies and procedures. I am pleased with the progress Sergeant O'Neal has made in her ability to supervise and keep her command apprised of pertinent information."

    ii.    "Sergeant O'Neal does an exceptional job at housekeeping. Her office workspace and her vehicle are always neat and clean. Sergeant O'Neal also practices good safety by utilizing issued equipment."

    iii.    "Sergeant O'Neal shows great initiative in her job. She strives to do a good job and keeps deadlines when completing tasks. She is progressing well as a shift sergeant, and she is adapting well with little supervision from me."

    iv.    "Sergeant O'Neal is very respectful when dealing with the public. She has a good reputation in the community and is well-liked by subordinates and co-workers. Sergeant O'Neal goes out of her way to help those in need."

    v.    "Sergeant O'Neal takes great pride in her profession and her personal work ethic to complete tasks. She produces a complete and accurate product."

---

[8] This was the fourth reason Sgt. O'Neal was provided by the Department for her reassignment. First, she was told she was reassigned because, as a junior sergeant, she should be part of a squad that could provide her with "more support." However, the squad change resulted in the two newest sergeants, including Sgt. O'Neal, being paired together and the two most experienced sergeants paired together on a different squad. Second, Capt. Edwards told her she was reassigned to get her away from a sergeant who did not pull his weight. Third, Sgt. O'Neal learned from co-workers that members of another squad were told she was reassigned because her subordinate officers did not respect her.

14

vi.   "Sergeant O'Neal is a person who thinks about situations and weighs the outcome and how it will "effect" [sic] her as an individual and the profession. Sergeant O'Neal brings a sense of maturity to the job and that aids in her judgment."

vii.   "Organization is a priority for Sergeant O'Neal. She keeps her work product organized and balances her personal life in keeping her work life balance intact. She plans events well in advance to provide little disruption to the organization."

viii.   "Reports published by Sergeant O'Neal are high quality and are written with excellent grammar. She publishes thorough narrative reports that contain all detail relayed to her from victims, witnesses, and suspects. I do not have to correct reports published by Sergeant O'Neal."

58.    When Sgt. O'Neal pressed Chief Burdette for specific examples these alleged "performance issues," he could not provide any, but he informed Sgt. O'Neal that he would be "monitoring" her performance himself moving forward.

59.    On October 2, 2020, the day after Chief Burdette told Sgt. O'Neal he would be monitoring her "performance issues," Capt. Edwards claimed she had "handled a case wrong," and, as a result the district attorney would be unable to prosecute the case. Sgt. O'Neal immediately contacted and met with the district attorney who assured her she had handled the investigation correctly and that the case could and would be prosecuted.

60.    On October 5, 2020, Sgt. O'Neal submitted her second grievance to Defendant Beaufort regarding, among other items 1) Chief Burdette's denial of her request not to work with or around Lt. Garner; 2) HR's violation of the Town's confidentiality policy regarding her request for EAP services; and 3) Chief Burdette's allegation that Sgt. O'Neal was re-assigned to the C/D squad because of "performance issues."

61.    On October 9, 2020, Capt. Edwards gave Sgt. O'Neal a written warning for "failing to take action" because she was unable to make contact with an offending homeowner when she investigated a nuisance call on October 6, 2020. However, two male officers had been dispatched to a nuisance call at the same address only two days prior who were also unable to make contact

15

with the offender, yet the male officers were not counseled, written up or otherwise disciplined as Sgt. O'Neal was.

62.     On October 13, 2020, Chief Burdette told Sgt. O'Neal she was "ruining the morale" around the Department because she could not "let go" of the situation with Lt. Garner. Further, the Chief asked when Sgt. O'Neal planned to "get over this," and stated, "you've got to look at this from Daniel's point of view. Here he is, thinking y'all are friends, and you go and do THIS to him. You hit him with an EEOC charge."

63.     On November 25, 2020, Chief Burdette reprimanded Sgt. O'Neal for releasing firearms to a citizen without first conducting a criminal background check. Sgt. O'Neal was shocked by this allegation because she was present when the Chief himself released the firearms to the citizen.[9] Sgt. O'Neal <u>could not</u> have released the guns back to the citizen—only the Department's administrative staff has access to the property room, and therefore, only the Chief could release the gun from the Department's custody back to the citizen. Sgt. O'Neal did not remove the guns from the property room, nor did she assist the citizen in loading his firearms into his car—Chief Burdette took these actions and authorized the release, yet he verbally counseled Sgt. O'Neal for same.

64.     On December 1, 2020, Capt. Edwards contacted Sgt. O'Neal at home and told her he needed to serve her with Notice of a Pre-Disciplinary Conference.[10]

_____

[9] On November 16, 2020, Chief Burdette asked Sgt. O'Neal to complete a firearm inventory prior to his releasing the guns back to a citizen. Sgt. O'Neal completed the inventory and the citizen signed the inventory in the Chief's presence. The Chief then assisted the citizen with loading the firearms in his vehicle and Sgt. O'Neal completed the "daily log" which indicated the property had been returned to its owner.

[10] Defendant Beaufort's policy states that a pre-disciplinary conference occurs only after an employee has received a second written warning; however, as of December 1, 2020, Sergeant O'Neal had only received one written warning.

65.     Chief Burdette scheduled the Pre-Disciplinary Conference for December 3, 2020. When the conference began, only Sgt. O'Neal, Chief Burdette and Capt. Edwards were present.[11] Sgt. O'Neal asked the Chief several times when the HR representative would arrive. Finally, Chief Burdette stated, "they're not coming." Sgt. O'Neal reminded the Chief that Town policy requires a representative from human resources to be present, to which the Chief replied, "that's not what it says, Angie. You misinterpreted the policy." This made Sgt. O'Neal very uncomfortable and she requested someone from HR join the meeting. Chief Burdette stated, "that's not happening."

66.     On December 7, 2020, Chief Burdette convened a "follow-up" pre-disciplinary conference, this time with an HR representative present. The Chief opened the meeting as if the December 3rd conference had not occurred. Sgt. O'Neal was confused and reminded the Chief that the pre-disciplinary conference had already taken place. The Chief ignored her concerns and proceeded with a second disciplinary conference.

67.     As a result of the Notice and the two pre-disciplinary conferences, Sgt. O'Neal received a second written warning on December 10, 2020.

68.     On December 18, 2021, Sgt. O'Neal submitted a third grievance—for the erroneous and retaliatory disciplinary actions taken against her by Chief Burdette, including the notice of pre-disciplinary conference, the two (2) pre-disciplinary conferences, and the second written warning received on December 10, 2020.

69.     In her third grievance, Sgt. O'Neal noted that the most concerning aspect of the situation was Chief Burdette's behavior—his blatant and reoccurring policy violations, his false statements, and his continued retaliation against Sgt. O'Neal.

---

[11] Defendant Beaufort policy states that a human resources ("HR") representative shall be present at pre-disciplinary conference.

70.     Nevertheless, Defendant Beaufort upheld the second written warning and took no action against Chief Burdette. Because Sgt. O'Neal has two (2) written warnings, she is ineligible for promotion and could be terminated if the Chief "determines" Sgt. O'Neal has violated a policy or had a "performance issue."

71.     As is set forth herein, Defendant Beaufort intentionally discriminated against Sgt. O'Neal because of her gender, created a hostile working environment and retaliated against her in violation of Title VII and 42 U.S.C. § 1981.

72.     As a direct result of Defendant's unlawful discrimination, harassment and retaliation, Sgt. O'Neal suffered and continues to suffer damages. Defendant is liable to Sgt. O'Neal for all damages and remedies available under the law, including, but not limited to, front pay, back pay, compensatory damages, liquidated damages, costs, and attorneys' fees.

**FIRST CLAIM FOR RELIEF**
**Gender Discrimination/Sexual Harassment in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. and the Civil Rights Act of 1991, 42 U.S.C. § 1981**

73.     Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

74.     As a female, Sgt. O'Neal is a member of a protected class.

75.     At all times relevant hereto, Sgt. O'Neal satisfactorily performed her job as a Sergeant with Defendant Beaufort's Police Department. Prior to reporting the sexual harassment and filing an EEOC Charge, Sgt. O'Neal had never been disciplined, nor had she received a negative performance evaluation. In her January 2020 performance evaluation, Chief Burdette and Sgt. O'Neal's immediate supervisor, Capt. Edwards indicated that:

i.     Sgt. O'Neal had developed significantly over the evaluation cycle;

18

ii.  Sgt. O'Neal maintains a positive working relationship with other members of the department and represents the department with pride;

iii.  Sgt. O'Neal is compassionate and willing to problem solve when the circumstances permit;

iv.  Sergeant O'Neal adheres to the chain of command and follows established policies and procedures. I am pleased with the progress Sergeant O'Neal has made in her ability to supervise and keep her command apprised of pertinent information;

v.  Sergeant O'Neal does an exceptional job at housekeeping. Her office workspace and her vehicle are always neat and clean. Sergeant O'Neal also practices good safety by utilizing issued equipment;

vi.  Sergeant O'Neal shows great initiative in her job. She strives to do a good job and keeps deadlines when completing tasks. She is progressing well as a shift sergeant, and she is adapting well with little supervision from me;

vii.  Sergeant O'Neal is very respectful when dealing with the public. She has a good reputation in the community and is well-liked by subordinates and co-workers. Sergeant O'Neal goes out of her way to help those in need;

viii.  Sergeant O'Neal takes great pride in her profession and her personal work ethic to complete tasks. She produces a complete and accurate product;

ix.  Sergeant O'Neal is a person who thinks about situations and weighs the outcome and how it will "effect" [sic] her as an individual and the profession. Sergeant O'Neal brings a sense of maturity to the job and that aids in her judgment;

x.  Organization is a priority for Sergeant O'Neal. She keeps her work product organized and balances her personal life in keeping her work life balance intact. She plans events well in advance to provide little disruption to the organization; and

xi.  Reports published by Sergeant O'Neal are high quality and are written with excellent grammar. She publishes thorough narrative reports that contain all detail relayed to her from victims, witnesses, and suspects. I do not have to correct reports published by Sergeant O'Neal.

76.  In May 2020, Sgt. O'Neal complained to Chief Burdette and Capt. Edwards, the Department's administrative head and her direct supervisor, on four (4) separate occasions about Lt. Garner sexually harassing her, yet no action was taken to investigate her claims or limit her

19

contact with Lt. Garner. To the contrary, Chief Burdette told her Lt. Garner was "joking," and Capt. Edwards told her that he was "getting sick" of her accusations.

77.    In June 2020, Sgt, O'Neal filed a Charge of Discrimination with the EEOC regarding the sexual harassment, discrimination and retaliation she endured at work. Yet, Defendant Beaufort still required Sgt. O'Neal to work directly with Lt. Garner for many months, even when she requested not to work with or around him.

78.    In addition, Defendant Beaufort, through the administrative staff of its Police Department, perpetuated the discrimination and harassment by, including but not limited to:

    i.    forcing Sgt. O'Neal to work closely with the officer who was sexually harassing her;

    ii.    Defendant Beaufort's Chief of Police telling Sgt. O'Neal the "animals were a joke," "that's Daniel for you," and characterizing Lt. Garner's actions as "pranks;"

    iii.    Defendant Beaufort's Chief of Police accusing Sgt. O'Neal of "keeping this thing going," telling her to "get over this;"

    iv.    Defendant Beaufort's supervisory officer, Capt. Edwards telling Sgt. O'Neal that he is "sick and tired of the innuendoes about Daniel, and it needs to stop;"

    v.    Defendant Beaufort's Chief of Police questioning Sgt. O'Neal as to whether she was "mentally capable" of doing her job in her "present state" because of the stress she felt from being forced to work with Lt. Garner;

    vi.    Defendant Beaufort's Chief of Police telling Sgt. O'Neal to "let go" and "get over" the situation with Lt. Garner and telling her "to look at this from Daniel's point of view.  Here he is, thinking y'all are friends, and you go and do THIS to him. You hit him with an EEOC charge;"

    vii.    disciplining Sgt. O'Neal for purported policy violations while not disciplining male officers for the same actions; and,

    viii.    in other ways to be determined through discovery.

79.    For approximately the last three (3) years, Defendant Beaufort engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981.

Specifically, Defendant Beaufort subjected Sgt. O'Neal to discrimination and sexual harassment because she was a female. The harassment was perpetuated by the administrative staff of Defendant Beaufort's Police Department, including but not limited to Chief Burdette and Capt. Edwards, who had actual knowledge of the discrimination and harassment yet refused to take any action to stop it.

80. The effect of the practices complained of hereinabove has been to deprive Sgt. O'Neal of equal employment because of her gender.

81. The unlawful employment discrimination complained of hereinabove was intentional because Defendant Beaufort, through the administrative staff of its Police Department, acted maliciously and with reckless indifference to Sgt. O'Neal's federally protected rights by refusing to take any remedial action to stop the harassment and forcing her to continue working with Lt. Garner.

82. Further, Defendant Beaufort, through the administrative staff of its Police Department, discriminated against Sgt. O'Neal by telling her Lt. Garner 's actions were "jokes" and "pranks," telling her to "get over it" and "move on," and telling her to "look at [the situation] from his perspective." Defendant Beaufort continuously characterized Lt. Garner as the victim, and painted Sgt. O'Neal as a female who did not "perceive" the actions of others correctly.

83. Defendant Beaufort valued its male law enforcement officers over Sgt. O'Neal's federally protected right to be free from gender discrimination and sexual harassment.

84. As a direct and proximate result of Defendant Beaufort's violations of Title VII, 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981 as described herein, Sgt. O'Neal has suffered and continues to suffer damages, including emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

85.     As a result of Defendant Beaufort's acts and omissions as set forth herein, Defendant is liable to Sgt. O'Neal for all damages and remedies available to her under the law including, but not limited to, compensatory damages, liquidated damages, costs, attorneys' fees, etc.

## SECOND CLAIM FOR RELIEF
### Hostile Work Environment in Violation of Title VII
### of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*

86.     Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

87.     Sgt. O'Neal was and continues to be subjected to continuous unwelcome harassment and hostility from Defendant Beaufort, by and through the administrative staff of its Police Department, including but not limited to Chief Burdette and Capt. Edwards.

88.     Defendant Beaufort's employees, particularly its administrative staff, harassed Sgt. O'Neal and created an overtly hostile working environment by, including to but not limited to:

     i.    ignoring her complaints of sexual harassment;

    ii.    forcing Sgt. O'Neal to continue working with Lt. Garner after she requested not to;

    iii.    accusing Sgt. O'Neal of "keeping this thing going," telling her to "get over this" and "let it go" when referring to her complaints of Lt. Garner's sexual harassment and inappropriate behavior;

    iv.    telling Sgt. O'Neal that he is "sick and tired of the innuendoes about Daniel, and it needs to stop;"

    v.    questioning Sgt. O'Neal as to whether she was "mentally capable" of doing her job in her "present state" because of the stress she felt from being forced to work with Lt. Garner;

    vi.    violating Sgt. O'Neal's right to confidentiality when she requested information regarding counseling services through the Town's EAP;

vii.    telling Sgt. O'Neal "to look at this from Daniel's point of view. Here he is, thinking y'all are friends, and you go and do THIS to him. You hit him with an EEOC charge;"

viii.   undermining her authority as a sergeant by questioning Sgt. O'Neal's subordinate officers as to whether she "lies," whether they "feel safe" with her decision-making abilities, and whether they "feel uncomfortable" working with her;

ix.    disciplining Sgt. O'Neal for purported policy violations while not disciplining male officers for the same actions;

x.     initiating informal and formal discipline against Sgt. O'Neal such that she would be ineligible for promotions and could face termination; and

xi.    in other ways to be determined through discovery.

89.    The harassment and hostility that Sgt. O'Neal endured was and continues to be unwelcome and she took actions to try and stop it—She complained to Defendant Beaufort's administrative staff numerous times regarding the harassment, including but not limited to the Town's Chief of Police, her immediate supervisor, and the Town itself. Additionally, Sgt. O'Neal confronted Lt. Garner and asked him to stop the harassment.

90.    Said unwelcome harassment and hostility was and continues to be sufficiently severe or pervasive that it altered the conditions of Sgt. O'Neal's employment and created a subjectively abusive work environment for Sgt. O'Neal in that 1) she complained to Chief Burdette, Capt. Edwards and the Town on numerous occasions; 2) she inquired into counseling services through the Town's EAP in order to cope with working with Lt. Garner; 3) she told HR and Chief Burdette that she did not trust or feel safe around Lt. Garner; 4) when possible, she remained in patrol car while at the station to avoid seeing Lt. Garner; and 5) she filed three (3) separate grievances regarding the daily harassment and hostility she endured.

91.    Said unwelcome harassment and hostility was objectively sufficiently severe or pervasive in that a reasonable person could conclude so based on the frequency of the unwelcome

23

harassment and hostility, its severity, and its humiliating impact upon Sgt. O'Neal, as well as its unreasonable interference with her work performance including, but not limited to:

    i.    the frequency and severity of the formal and informal discipline that Defendant imposed upon Sgt. O'Neal, including being reassigned to a shift that conflicted with her class schedule within hours of complaining to Chief Burdette and Capt. Edwards about Lt. Garner's behavior and receiving monthly, if not weekly, "counseling" and "warnings" regarding "performance issues;"

    ii.    instigating unwarranted and discriminatory formal discipline against Sgt. O'Neal such that she would be ineligible for promotions and could face termination;

    iii.    the numerous complaints by Sgt. O'Neal to the Town itself and to administrative staff of Defendant Beaufort's Police Department that yielded no results but only served to make the harassment worse; and

    iv.    undermining her authority as a sergeant by questioning Sgt. O'Neal's subordinate officers as to whether she "lies," whether they "feel safe" with her decision-making abilities, and whether they "feel uncomfortable" working with her.

92.    Defendant is liable for the harassment and hostility Sgt. O'Neal endured at the hands of Lt. Garner because Defendant Beaufort had actual knowledge of the harassment and hostile working environment yet <u>failed to take any remedial action</u>. Sgt. O'Neal complained directly to the Chief of Police and her immediate supervisor regarding the continued harassment—they ignored her complaints.

93.    Further, Defendant is liable for the harassment and hostility that Sgt. O'Neal endured at the hands of Chief Burdette and Capt. Edwards because Defendant Beaufort had actual knowledge of the harassment and hostile working environment yet <u>failed to take appropriate remedial action to correct it</u>. Sgt. O'Neal filed three (3) grievances with the Town regarding the hostile conditions she endured at work. Specifically, Sgt. O'Neal expressed how anxious she was because she never knew when and for what the Chief would decide to "discipline" her for next.

94.    In addition, Defendant Beaufort and its Police Department administrative staff perpetuated the harassment by, including but not limited to:

i.      forcing Sgt. O'Neal to continue working with Lt. Garner after she requested not to;

ii.     ignoring Chief Burdette's blatant and continued policy violations in regard to his unwarranted and discriminatory attempts to discipline Sgt. O'Neal;

iii.    accusing Sgt. O'Neal of "keeping this thing going," telling her to "get over this" and "let it go" when referring to her complaints of Lt. Garner's sexual harassment and inappropriate behavior;

iv.     questioning Sgt. O'Neal as to whether she was "mentally capable" of doing her job in her "present state" because of the stress she felt from being forced to work with Lt. Garner;

v.      violating Sgt. O'Neal's right to confidentiality when she requested information regarding counseling services through the Town's EAP;

vi.     telling Sgt. O'Neal "to look at this from Daniel's point of view.  Here he is, thinking y'all are friends, and you go and do THIS to him. You hit him with an EEOC charge;"

vii.    undermining her authority as a sergeant by questioning Sgt. O'Neal's subordinate officers as to whether she "lies," whether they "feel safe" with her decision-making abilities, and whether they "feel uncomfortable" working with her;

viii.   initiating informal and formal discipline against Sgt. O'Neal such that she would be ineligible for promotions and could face termination; and

ix.     in other ways to be determined through discovery.

95.     For the last three (3) or more years, Defendant Beaufort engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). Specifically, Defendant subjected Sgt. O'Neal to hostile work environment based on her sex.

96.     The unlawful employment discrimination complained of hereinabove was intentional because Defendant acted maliciously and with reckless indifference to Sgt. O'Neal's federally protected rights by refusing to take any remedial action to stop the harassment and/or correct the hostile working environment and by perpetuating the hostile work environment as set forth herein, specifically Paragraphs 88 and 94.

97.     As a direct and proximate result of Defendant Beaufort's violations of Title VII as described herein, Sgt. O'Neal has suffered and continues to suffer damages, including emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

98.     As a direct and proximate result of Defendant Beaufort's acts and omissions as set forth herein, Defendant is liable to Sgt. O'Neal for all damages and remedies available under the law to her including, but not limited to, front pay, back pay, compensatory damages, liquidated damages, costs, attorneys' fees, etc.

<u>THIRD CLAIM FOR RELIEF</u>
**Retaliation in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. § 2000e** *et seq.*

99.     Plaintiff reiterates and realleges each and every paragraph above as if set forth fully herein.

100.     Sgt. O'Neal complained about the sexual harassment she endured, as described herein, to her supervisor, Capt. Edwards, and Chief Burdette on at least four (4) occasions in May 2020. Sgt. O'Neal's internal complaints of sexual harassment and discrimination constitute protected activities under federal law.

101.     Within a matter of days (and hours) after she complained to the administrative staff of Defendant Beaufort's Police Department, Defendant took adverse actions against Sgt. O'Neal including, but not limited to:

    i.    Changing her squad assignment knowing that it would likely result in her failing one or more of her graduate school classes;

    ii.    placing unwarranted negative information in her personnel file and refusing to include Sgt. O'Neal's rebuttal statements in her file; and

    iii.    subjecting her to informal and formal discipline, the effect of which could be loss of promotional opportunities and/or termination.

26

102. After she experienced the retaliatory behavior described above, Sgt. O'Neal knew that neither Chief Burdette, nor Capt. Edwards intended to investigate and/or take action regarding her complaints. Thereafter, she filed a Charge of Discrimination with the EEOC on June 2, 2020 and three grievances with Defendant Beaufort (June 1, 2020; October 5, 2020, and December 18, 2020), all of which constitute protected activities under federal law. In her Charge and grievances, Sgt. O'Neal detailed the relentless harassment, hostility, discrimination, and subsequent retaliation she endured at the hands of the Department's administrative staff.

103. Subsequent to filing the EEOC Charge and grievances, Defendant took adverse actions against Sgt. O'Neal by, including but not limited to:

i. undermining her authority as a sergeant by questioning her subordinate officers as to whether she "lies," whether they "feel safe" with her decision-making abilities, and whether they "feel uncomfortable" working with her;

ii. initiating informal and formal discipline against Sgt. O'Neal such that she is now ineligible for promotions and could face termination;

iii. propagating the false assumption that Lt. Garner was a victim of Sgt. O'Neal's skewed perception of events;

iv. ignoring Chief Burdette's blatant and continued policy violations in regard to his unwarranted and discriminatory attempts to discipline Sgt. O'Neal; and

v. perpetuating Chief Burdette's unwarranted and discriminatory discipline of Sgt. O'Neal by upholding the written warnings he issued to her.

104. A causal connection exists between Sgt O'Neal's complaints of sexual harassment, discrimination, a hostile work environment and the adverse actions taken against her as set forth above because 1) Chief Burdette began disciplining Sgt. O'Neal within days and hours of her complaints regarding Lt. Garner's sexual harassment, and 2) Chief Burdette continued to escalate the disciplinary actions he took against Sgt. O'Neal after she filed an EEOC Charge and subsequent to each grievance she submitted to Defendant Beaufort.

27

105.     Because Defendant Beaufort upheld the unwarranted and discriminatory discipline Chief Burdette placed in Sgt. O'Neal's personnel file, she is ineligible for certain promotional opportunities, and could face termination in the future.

106.     Defendant Beaufort began and continues to retaliate against Sgt. O'Neal because she complained about the sexual harassment, discrimination, and hostility she endured, and continues to endure, in the workplace.

107.     As a direct and proximate result of Defendant Beaufort's retaliation as described herein, Sgt. O'Neal has suffered and continues to suffer damages, including emotional distress, pain and suffering, mental anguish, loss of enjoyment of life and other non-pecuniary damages.

108.     As a further direct and proximate result of Defendant Beaufort's retaliation as described herein, Sgt. O'Neal is entitled to recover all damages and remedies available under the law to her including, but not limited to, front pay, back pay, compensatory damages, liquidated damages, costs, attorneys' fees, etc.

## JURY DEMAND

Plaintiff demands a trial by jury of the claims asserted in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays the Court for judgement against Defendant to the full extent permitted by 29 U.S.C. § 794a(a)(1), 42 U.S.C. § 2000e-5(f)-(k) and 42 U.S.C. § 1981a, including but not limited to, the following:

1.     Judgment in Plaintiff's favor, determining that Defendant's actions and conduct towards and relating to Plaintiff violated the Title VII of the Civil Rights Act of 1964 and the Civil Rights Act of 1991.

2.     Award Plaintiff all monetary damages incurred.

28

3.      Award Plaintiff damages for mental anguish, emotional distress, pain and suffering, and other non-pecuniary damages.

4.      Award Plaintiff the costs, disbursements, expenses, reasonable attorneys' fees and expert witness fees incurred by Plaintiff in filing and prosecuting this action pursuant to 42 U.S.C. § 1981a and as may be authorized by any other applicable federal laws.

5.      Award Plaintiff pre- and post-judgment interest to Plaintiff on all damages; and

6.      For all other, further relief as this Court deems just and appropriate.


This the 17th day of March, 2021.

                                        Respectfully submitted,


                                        _/s/ Lindsey A. Bullard_____
                                        Lindsey A. Bullard, N.C. Bar No. 46664
                                        Dawn T. Mistretta, N.C. Bar No. 31691
                                        GREEN MISTRETTA LAW, PLLC
                                        1752 Heritage Center Drive, Suite 101
                                        Wake Forest, NC 27587
                                        Telephone:     (919) 278-7453
                                        Facsimile:     (855) 876-8893
                                        dmistretta@gmlawyers.org
                                        lbullard@gmlawyers.org
                                        *Counsel for Plaintiff*