| | |
|---|---|
| ANGELA O'NEAL,<br>    Plaintiff, | )<br>)<br>) |
| v. | )     O R D E R<br>) |
| TOWN OF BEAUFORT, NC,<br>    Defendant. | )<br>)<br>) |

This cause comes before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and the motion is ripe for ruling. For the reasons that follow, defendant's motion is granted in part and denied in part.

## BACKGROUND

Plaintiff instituted this action by filing a complaint in this Court on March 17, 2021. On May 3, 2021, plaintiff filed an amended complaint alleging claims against the Town of Beaufort and Paul Burdette. On June 24, 2021, plaintiff voluntarily dismissed her claims against Burdette. Her amended complaint thus alleges three claims for relief against the Town of Beaufort (the Town) pursuant to Title VII of the Civil Rights Act of 1964: gender discrimination/sexual harassment, hostile work environment, and retaliation.

The following facts are derived from the facts contained in the parties' Local Rule 56.1 statements and the allegations in plaintiff's amended complaint. In 2014, plaintiff was hired as a part-time officer with the Beaufort Police Department and began working as a full-time officer in January 2015. Paul Burnette has served as the Chief of Police for defendant Town of Beaufort

since 2015. She reluctantly agreed to retire from the Beaufort Police Department on May 20, 2021, after she filed her amended complaint.

Plaintiff complains about two positions for which she applied but was not selected. The first was a school resource officer vacancy that arose in 2017 and the second was for a detective position which arose in 2018. Both of those vacancies were filled more than one year before plaintiff's EEOC charge. In the fall of 2018, a sergeant position vacancy arose for which plaintiff was selected, effective November 21, 2018.

While she employed by the Beaufort Police Department and during the relevant time period, Captain Troy Edwards conducted plaintiff's evaluations. Plaintiff worked with Lieutenant Daniel Garner, who was not plaintiff's supervisor and did not conduct her evaluations. From January 2015 to March 2018, plaintiff and Garner shared equal rank. Garner was promoted to Detective Sergeant in March 2018 and plaintiff was promoted to Patrol Sergeant in November 2018. Garner was promoted to Lieutenant in July 2019.

Plaintiff further complains about comments and treatment by Garner. She relies in particular on text messages which began in February 2018 and included flirtatious, offensive, and inappropriate comments. Some text messages concern plaintiff seeking assistance from Garner with her application for a vacant position, wherein Garner's responses include statements such as "She finally asked me out on a date" when plaintiff offered to buy him lunch for reviewing her resume and that he must be a gigolo being paid for professional services. Garner also makes statements such as "I've been hitting on you for a long time" and makes veiled sexual comments. In September 2018, due the approach of a hurricane, Beaufort police officers were required to spend the night in the police station. Plaintiff contends that Garner approached her and told her she could sneak into his office overnight and he could make sure she was out before anyone saw

2

her in the morning. The next day, Garner texted her saying she had messed up his plans by not sleeping at the police station and that he had wanted to see if she needed "snuggling" during the storm. Plaintiff did not report the text messages or any comments to Edwards, Burdette, or any other supervisor at the time.

Plaintiff contends that beginning in November 2019 Garner began positioning three stuffed animals that she kept on her desk in lewd positions; another officer had previously rearranged the stuffed animals, but plaintiff contends that, although she was not present when it happened, it was Garner who arranged them in lewd positions. In December 2019, plaintiff confronted Garner about the stuffed animals and told him she did not like it and that she could get into trouble because someone, such as the mayor, could walk past her office and see them. Several days after that conversation, plaintiff discovered her stuffed animals arranged on her desk in what appeared to be a murder-suicide scene. The stuffing had been pulled out of some of the animals and a red substance was applied to look like blood. One animal was positioned with a toy gun near its mouth. Plaintiff did not report Garner to Burdette or Edwards for his alleged behavior with the stuffed animals. However, plaintiff believes Burdette and Edwards were both aware that Garner had been arranging her stuffed animals in lewd displays. Plaintiff agrees that after December 2019 Garner did not make any further inappropriate sexual comments to her.

In January 2020, plaintiff was approved to attend the Administrative Officers Management Program (AOMP), a fourth-month training program sponsored by North Carolina State University, the North Carolina Highway Patrol, and the Wake County Sheriff's Office. Plaintiff's classes ended in April 2020, and, though Garner did contact her about a case while she attended the program, she did not have any other contact with him during this period. Plaintiff contends that

3

when she returned from AOMP her stuffed animals started to be moved into scenes such as crime scenes again so she took them home.

Plaintiff contends that once she took her stuffed animals home, Garner began complaining about her to others and, despite no prior performance issues, she began being disciplined and written up for performance issues. On May 10, 2020, plaintiff was issued a first written warning for violating the department's ballistic vest policy. Plaintiff contends that her issued vest did not fit properly and thus she chose to wear a different vest, and that she was not the only officer to do so. Plaintiff's department-issued vest had been returned to the manufacturer twice after she reported problems with it. The Town contends that Burdette asked plaintiff whether she had told any of her supervisors that she continued to have problems with the vest and that she said she had not. Defendant asserts that plaintiff had been made aware that her vest had expired a week prior to her being issued a warning about her vest, and that plaintiff further informed Burdette that her vest was in her husband's vehicle, and that she was then issued the warning.

The next day, plaintiff returned to Burdette's office, where he contends that she "changed her story" by saying she had reported problems with her department-issued ballistic vest after it had been returned for the second time from the manufacturer. Burdette asked Garner to join him to be a "second set of ears" for his ensuing conversation with plaintiff; Burdette indicated his belief that plaintiff had a habit of changing her story and wanted another individual to be present during the meeting. Burdette contends that plaintiff asked for the additional person to be someone other than Garner because Garner "demeaned" or "humiliated" plaintiff.

On June 1, 2020, plaintiff's attorney from the Police Benevolent Association submitted a grievance on plaintiff's behalf to the Town Manager regarding the ballistic vest discipline, Burdette's questioning of plaintiff's integrity, and a change to plaintiff's squad assignment which

4

plaintiff believed to be in retaliation for her complaints about Garner. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on June 5, 2020. Her charge, in letter form drafted by her counsel, indicates plaintiff has been subjected to gender/sex discrimination, sexual harassment, hostile work environment, and retaliation.

Though plaintiff believes that Burdette was already aware of Garner's inappropriate sexual comments to plaintiff, on August 10, 2020, plaintiff reported Garner's conduct to Burdette. Burdette responded that he was unaware of Garner's conduct and that had plaintiff reported it he would have taken action. Plaintiff agrees that she had not reported Garner's text messages to Burdette until August 10, 2020, and that she had not told anyone (within the police department) about the texts. Burdette asked to see the texts, and plaintiff responded that she would confirm with her attorney that she could share them, and further that she did not want to get Garner in trouble.

Burdette immediately opened an internal investigation and Garner was placed on administrative leave. Burdette contacted the Pamlico County Sheriff's Department for assistance, and a Pamlico County Sheriff's Deputy conducted an investigation and prepared a report. On September 21, 2020, plaintiff was provided a letter stating that her allegation had been sustained, that Garner had been found in violation of policy, and that the disciplinary process which followed would be confidential. Garner was ultimately suspended for two days without pay and ordered to have no direct contact with plaintiff unless it was an emergency situation. In February 2021, Garner was ultimately terminated for insubordination after violating Burdette's order not to have any contact with plaintiff.

On October 5, 2020, plaintiff filed a grievance with the Town Manager. She listed five grievances concerning (1) being required by Burdette to work with Garner, (2) Burdette being

given confidential information about plaintiff by the employee assistance program, (3) being continually questioned by Burdette about her vest although that matter had been resolved, (4) Burdette's change of reason given for her squad schedule change to performance issues, though neither Burdette nor Edwards would inform plaintiff of what those issues were, and (5) Burdette's continued questioning of plaintiff's integrity. On November 25, 2020, Burdette sent a memorandum to the Town Manager detailing his and Edwards' observations about plaintiff's ongoing performance problems. On December 18, 2020, plaintiff filed a third grievance with the Town Manager concerning notice of a pre-disciplinary conference, two pre-disciplinary conferences, and a written warning received on December 10, 2020. The issues addressed in the disciplinary conferences were plaintiff's alleged violations of policies related to firearms management and carrying primary weapons while on duty.

In February 2021, a vacancy arose for an administrative lieutenant position and plaintiff submitted a letter on February 18, 2021, expressing interest in the position. Burdette informed her that she was ineligible because, among other things, she had written warnings in her personnel file. This lawsuit was filed on March 17, 2021. On March 30 2021, Burdette received a formal complaint about plaintiff from three of her co-workers, based upon which the Town initiated an internal affairs investigation concerning her. On March 31, 2021, plaintiff filed a fourth grievance regarding Burdette's denial of plaintiff's participation in the promotion process for the administrative lieutenant position. On April 2, 2021, Burdette authored a memorandum to the Mayor, Board of Commissioners, and other Town representatives outlining plaintiff's violations or write-ups and what Burdette believes to be evidence of plaintiff's inconsistent statements regarding these incidents.

6

Following negotiations between her attorneys and the Town Attorney, plaintiff contends she was forced to retire; the Town describes plaintiff as choosing to retire and resign from the Beaufort Police Department. The same day, on May 21, 2021, Burdette sent plaintiff a memo indicating that because she had submitted retirement paperwork he would treat her complaints as resolved without investigation.

During his tenure as police chief, Burdette has hired several female employees and has terminated a number of male employees. The Town has an established policy concerning sexual harassment, including how to report it, and it conducted training for all of its employees in 2017 and a refresher for the police department in 2020. During 2019 and 2020, the Town had fewer than 100 employees on its payroll.

## DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If that burden has been met, the non-moving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. . . . and [a] fact is material if it

7

might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotations and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

The Town seeks summary judgment in its favor on each of plaintiff's claims.

I. Gender discrimination/sexual harassment

An individual alleging discrimination in violation of Title VII must first file an administrative charge with the Equal Employment Opportunity Commission (EEOC) generally within 180 days of the alleged unlawful act. 42 U.S.C. § 2000e-5(e)(1). The failure to timely file a charge with the EEOC bars the claim in federal court. *McCollough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994); *see also Ft. Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019) (180-day time period is a mandatory prerequisite to suit but not jurisdictional).

Plaintiff's EEOC charge was filed on June 5, 2020. Thus, any discrete act occurring more than 180 days before June 5, 2020 – December 8, 2019 – cannot form the basis of her claim for gender discrimination/sexual harassment.

The non-selection of plaintiff for the school resource officer position and the narcotics detective vacancy occurred in 2017 and 2018. Plaintiff contends that Garner's inappropriate comments began as early as 2015, and she relies on his text messages which were sent in 2018 as well as his rearrangement of her stuffed animals in 2019. Plaintiff admits that after she confronted Garner about the stuffed animals on December 7, 2019, he made no additional sexual comments. Plaintiff further admits that when she returned from AOMP school in April 2020 someone began rearranging her stuffed animals again, but they were not posed in lewd positions.

8

Accordingly, her non-selection for vacancies in 2017 and 2018 and Garner's discrete behavior prior to December 8, 2019, cannot form the basis of a sexual harassment or gender discrimination claim. Additionally, in her response to the instant motion, plaintiff provides argument only in support of her hostile work environment and retaliation claims. The Court therefore deems any argument relating to her gender discrimination/sexual harassment claim arising from conduct within the 180-day time period waived, and summary judgment in defendant's favor is appropriate. *See Orbit Corp v. FedEx Ground Package Sys.*, No. 2:14cv607, 2016 U.S. Dist. LEXIS 155212, at *53 (E.D. Va. Nov. 8, 2016

II. Hostile work environment

Though many of the discrete acts about which plaintiff has complained fall outside the 180-day time period preceding her EEOC charge, so long as "an act contributing to the [hostile work environment] claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002). The Court determines that plaintiff's hostile work environment claim was timely presented to the EEOC.

A hostile work environment exists where "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment". *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotations and citation omitted). In order to prove a claim for a hostile work environment in violation of Title VII, plaintiff must demonstrate that "(1) she experienced unwelcome harassment; (2) the harassment was based on her gender, race, or age; (3) the harassment was sufficiently severe or pervasive to alter the conditions of employment and

9

create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

The Town's motion for summary judgment focuses on the fourth prong, that is, whether there is a basis for imposing liability on the Town based on Garner's behavior. The Town first contends that the evidence establishes, and indeed, plaintiff does not dispute, that Garner was not plaintiff's direct supervisor, and that for much of the time at issue they held the same rank. "[A]n employer may be liable for hostile work environments created by co-workers and third parties 'if it knew or should have known about the harassment and failed to take effective action to stop it by responding with remedial action reasonably calculated to end the harassment.'" *Pryor v. United Air Lines, Inc.*, 791 F.3d 488, 498 (4th Cir. 2015) (quoting *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 319 (4th Cir. 2008) (alterations omitted)). However, "a plaintiff seeking to impute liability to her employer for harassment by a co-worker may not be able to establish the employer's negligence if she did not report the harassment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015).

Here, the Town contends that Burdette did not know about Garner's comments or behavior posing plaintiff's stuffed animals until plaintiff reported the same either through her EEOC charge which was sent to the Town Manager or when she informed Burdette about Garner's comments in August 2020. But plaintiff has proffered evidence in the form of her affidavit that Burdette and her supervisor Edwards did know about Garner's stuffed animal displays as they had both commented to her about them. [DE 43-1 ¶¶ 15,16].

Though Burdette was not aware of the text messages and any other statements by Garner until August 2020, construing the evidence in the light most favorable to plaintiff as is required,

10

there is a genuine issue of material fact as to whether plaintiff's supervisors were aware of the stuffed animal scenes, which were repeated, lewd, and, certainly in one instance, disturbing.

The Town also contends that it is not liable under the *Ellerth/Faragher* defense. This defense applies to shield an employer from being strictly liable for a supervisor's harassing behavior if the employer can show that "(1) the employer exercised reasonable care to prevent and correct any harassing behavior and (2) that the plaintiff unreasonably failed to take advantage of the preventive or corrective opportunities that the employer provided." *Vance v. Ball State Univ.*, 570 U.S. 421, 424 (2013) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998) and *Faragher v. Boca Raton*, 524 U.S. 775 (1998). "The Ellerth/Faragher defense, in essence, imposes a duty on the victim to report her supervisor's harassing behavior to the employer." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 278 (4th Cir. 2015). "The defense is only available, however, if no adverse tangible employment action was taken by the [employer]." *Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 265 (4th Cir. 2001). Plaintiff was not demoted, her pay was not reduced, and her employment was not terminated. Though she states that she was forced to retire in May 2021, her amended complaint does not allege that she was constructively discharged.

A supervisor for purposes of Title VII liability is a person who "is empowered by the employer to take tangible employment actions against the victim[.]" *Vance*, 570 U.S. at 424. Tangible employment actions include the power to "hire, fire, demote, promote, transfer, or discipline the plaintiff." *Cooper v. Smithfield Packing Co.*, 724 F. App'x 197, 203 (4th Cir. 2018).

As noted above, plaintiff agrees that Garner was not her direct supervisor. She contends however, that during the period that he held a higher rank, he was considered to be her superior and had the authority to reprimand or discipline her. Garner was promoted to Lieutenant in July

11

2019. Thus, construing the facts in the light most favorable to plaintiff, Garner could be considered her supervisor for Title VII purposes from July 2019 until his employment was terminated. Burdette and Edwards were plaintiff's supervisors.

Genuine issues of fact again preclude entry of summary judgment. Though the Town essentially limits its description of plaintiff's harassment to Garner's behavior, plaintiff plainly complains that Garner's behavior was the beginning, but not the end, of her harassment and hostile work environment. Plaintiff points to Burdette's and Edwards's own behavior in subjecting her to disciplinary measures which male officers were not subjected to when they engaged in the same or similar conduct. She links Burdette's and Edwards's increased criticism of her to Garner's complaints about her to others after she removed the stuffed animals from her desk. [DE 43 ¶ 18]. At bottom, viewing the facts in the light most favorable to plaintiff, once Garner ceased harassing plaintiff with text messages and stuffed animal displays, he, Burdette, and Edwards continued in creating a hostile work environment by subjecting plaintiff to unwarranted discipline, describing plaintiff as "paranoid," and otherwise undermining her authority, all of which plaintiff contends was done because of her gender.[1]

In sum, sufficient material factual issues are present on this record such that summary judgment is not appropriate on plaintiff's hostile work environment claim. The Court does not, however, hold that the Town is prohibited from presenting its *Ellerth/Faragher* defense at trial.

---

[1] Although some of the actions on which plaintiff relies occurred after she filed her EEOC charge, "discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent Title VII lawsuit." *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 963 (4th Cir. 1996).

12

III. Retaliation

To establish a Title VII retaliation claim, plaintiff must show that (1) she engaged in protected activity, (2) her employer took an adverse action against her, and (3) there is a causal relationship between his protected activity and the adverse action. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). The burden then shifts to the employer to show that the adverse action was based upon a legitimate, non-retaliatory reason, after which the plaintiff must show that the employer's legitimate reason is actually pretext. *Id.* "[R]etaliatory actions need not affect the terms and conditions of employment to come within Title VII's prohibition. However, retaliatory actions do have to be materially adverse—such that they might have dissuaded a reasonable worker from engaging in protected activity." *Strothers v. City of Laurel, Maryland*, 895 F.3d 317, 327 (4th Cir. 2018) (cleaned up).

Plaintiff has not created a genuine issue of material fact which would preclude entry of summary judgment on her retaliation claim. Her first protected actions occurred in June 2020, when she filed a grievance and an EEOC charge. Thus, any adverse actions which occurred before that date could not have been in retaliation for plaintiff's protected activity. After June 2020, plaintiff's shift was reassigned, she was subjected to a pre-disciplinary hearing, she was not considered for a 2021 vacancy, and other officers filed an internal affairs complaint against her.

In her amended complaint, plaintiff cites to the following adverse actions initiated by defendant Burdette and Edwards: undermining plaintiff's authority, initiating informal and formal discipline, propagating false assumptions, failing to allow plaintiff to apply for a vacant lieutenant decision or make an accommodation which would allow her to apply, mischaracterizing plaintiff's statements which resulted in other officers filing a complaint about her, and instituting an internal affairs investigation based on false and misleading information.

13

"The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67 (2006). "[R]eprimands without collateral consequences cannot be characterized as 'adverse.'" *Hinton v. Va. Union Univ.*, 185 F. Supp. 3d 807, 832 (E.D. Va. 2016). Even if the Court "presume[s] [plaintiff] to be blameless (or nearly so) for summary judgment purposes", discipline or reprimands that carry or result in no tangible consequences are not actionable. *Bhatti v. Trs. of Bos. Univ.*, 659 F.3d 64, 73 (1st Cir. 2011). Accordingly, most of what plaintiff alleges as retaliation was not materially adverse.

The non-selection for the 2021 lieutenant vacancy and the internal affairs complaint would carry tangible consequences, however. Burdette informed plaintiff that she would not be eligible for the lieutenant vacancy because she had write-ups in her file. Plaintiff does not dispute that this was true, and she has not proffered evidence which would show that this reason was mere pretext. Whether plaintiff agrees that the write-ups were warranted or that they should have prevented her from being eligible for the position is not relevant – she must show that defendant's explanation is "unworthy of credence" and "offer[] circumstantial evidence that retaliation was the real reason for the adverse personnel action." *Campbell v. Wormuth*, No. 19-2395, 2022 U.S. App. LEXIS 35671, at *9 (4th Cir. Dec. 27, 2022). Plaintiff has failed to do so here.

As to the internal affairs complaint, this was made not by Burdette or Edwards but by other officers. Plaintiff has not proffered evidence which would permit a jury to find retaliatory animus by her co-workers who complained about her behavior internally.

In sum, the Town is entitled to summary judgment in its favor on plaintiff's retaliation claim. While plaintiff engaged in protected conduct, she has either failed to identify retaliation which produced harm or has not created a genuine issue of fact as to pretext.

14

Finally, plaintiff has not responded to the Town's argument that a $50,000.00 damages cap applies because during 2019 and 2020 defendant had fewer than 100 employees. *See* 42 U.S.C. § 1981a(b)(3). "Under § 1981a(b)(3)(A), the sum of a [Title VII] plaintiff's compensatory and punitive damages must be capped at $50,000 where the defendant had more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year." *Owen v. Rutherford Supply Corp.*, No. 3:19CV225-HEH, 2020 WL 4018937, at *2 (E.D. Va. July 16, 2020). The Town's evidence is sufficient to establish the number of employees and, in the absence of any argument to the contrary, the Court determines that the $50,000 cap applies to plaintiff's damages.

## CONCLUSION

In sum, defendant's motion for summary judgment [DE 37] is GRANTED IN PART and DENIED IN PART. Defendant is entitled to summary judgment on plaintiff's first and third claims for relief. Plaintiff's second claim for relief – that she was subjected to a hostile work environment in violation of Title VII – survives defendant's motion and will proceed to trial. The clerk is DIRECTED to refer this matter to the assigned United States Magistrate Judge for pretrial conference.

SO ORDERED, this 24 day of August 2023.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE